UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS LOCAL UNION 20,<br><br>    PLAINTIFF,<br><br>vs.<br><br>VAN'S INDUSTRIAL, INC., AND INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS, LOCAL UNION 395,<br><br>    DEFENDANTS. | CAUSE NO. 2:15-CV-044-RLM-JEM |

OPINION and ORDER

Sheet Metal, Air, Rail Transportation Workers, Local Union 20 ("Local 20") brought this action asking the court to vacate an arbitration award and order a rehearing based on the arbitrator's undisclosed bias. The matter is before the court on a motion by respondent Bridge, Structural, Ornamental and Reinforcing Iron Workers, Local Union 395 ("Local 395") to dismiss for lack of standing. (Doc. No. 24).

Van's Industrial, Inc.[1] is an employer in the sheet metal industry, and performs work as an outside contractor at the U.S. Steel facility in Gary, Indiana.

---

[1] Although nominally a respondent in this case, Van's Industrial has indicated that it takes no position on the underlying dispute and will accept any orders the court issues. (Doc. No. 4).

The work is covered by a National Maintenance Agreement,[2] a collective bargaining agreement between several large industrial contractors on the one side and several international labor unions on the other. As relevant here, the National Maintenance Agreement includes procedures for resolving disputes when two unions doing work for an employer disagree about which of them should get a particular work assignment. Disputes of that sort are referred to as "jurisdictional disputes."

Local 20 is a local affiliate of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("International Sheet Metal"). Local 395 is a local affiliate of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("International Iron Workers"). Both of the international unions are signatories to the National Maintenance Agreement; the local affiliates are not signatories. In April 2014, Van's Industrial assigned the installation, removal, and repair of wear plates at the Gary facility to Local 20. Local 395 contested the assignment and insisted that it should get the project instead, invoking the National Maintenance Agreement's jurisdictional dispute mechanism. Pursuant to this mechanism, an Umpire was appointed and held an arbitration hearing. The positions of Local 20 and Local 395 were represented at the hearing by their respective international unions; the local affiliates didn't

---

[2] A copy of the National Maintenance Agreement is attached to Local 20's motion to vacate the arbitration award as Exhibit A. It is therefore part of the record before the court on the instant motion to dismiss.

directly participate in the hearing. Before the hearing, the Umpire disclosed that he had previously been a member of International Iron Workers, but the parties consented to have him hear the case despite this connection. The Umpire ultimately decided that the work in question should have gone to Local 395 instead of Local 20, and held that the wear plate assignment would be reassigned.

Shortly after the arbitration hearing, Local 20 discovered documents indicating that the Umpire's personal interest in the case was more substantial than Local 20 had originally believed; rather than being only a former member of Local 395's international union, he was still a current member of Local 395 itself. Local 20 then filed this case, asking the court to overturn the Umpire's decision under the Indiana statute providing that a court may vacate an arbitration award when "there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party." Ind. Code § 34-57-2-13.

Local 395 bases its motion on Federal Rule of Civil Procedure 12(b)(1), which provides that a party may move to dismiss a case for lack of subject-matter jurisdiction. A party's standing to sue implicates the court's subject matter jurisdiction, so standing issues can be raised in a Rule 12(b)(1) motion. *See* American Fed'n of Gov't Employees, Local 2119 v. Choen, 171 F.3d 460, 465 (7th Cir. 1999) ("Obviously, if a plaintiff cannot establish standing to sue, relief from the court is not possible, and dismissal under 12(b)(1) is the appropriate

disposition."). A plaintiff bears the burden of proving the required elements of standing; when standing is called into question, the plaintiff must come forward with "competent proof – that is a showing by a preponderance of the evidence – that standing exists." Lee v. City of Chicago, 330 F.3d 456, 468 (7th Cir. 2003). When considering a motion to dismiss for lack of standing, the court may look beyond the allegations of the complaint to other competent evidence that calls the court's jurisdiction into question. Bastuen v. AT & T Wireless Serv., Inc., 205 F.3d 983, 990 (7th Cir. 2000).

Two related doctrines have traditionally governed a plaintiff's standing to sue in federal court: constitutional standing, and a set of "prudential" standing principles distinct from the constitutional requirements. As part of the "case or controversy" requirement embodied in Article III of the United States Constitution, a party must demonstrate constitutional standing to sue in federal court by establishing: (1) an injury in fact; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). "In addition to constitutional-standing requirements, however, there are prudential limitations on a federal court's power to hear cases" which are "not jurisdictional in the sense that Article III standing is." Rawoof v. Texor Petroleum Co., 521 F.3d 750, 756-757 (7th Cir. 2008). The doctrine of prudential standing bars courts from hearing certain types of cases even when the plaintiff satisfies the requirements of Article III standing. *See*

Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co., 733 F.3d 761, 771 (7th Cir. 2013).

Prudential standing doctrine is "not exhaustively defined" but includes "the general prohibition on a litigant's raising another person's legal rights" in addition to other limitations not implicated here. Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014). To have prudential standing to bring an action, therefore, a plaintiff "generally must assert his own legal rights and interests and cannot assert the legal rights or interests of third parties." Dunnet Bay Const. Co. v. Borggren, 799 F.3d 676, 689 (7th Cir. 2015) (internal quotations omitted); *see also* Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co., 733 F.3d 761, 771 (7th Cir. 2013) (holding that a plaintiff lacked prudential standing where the "relief sought … [was] a ruling regarding the rights of the parties to [an] insurance policy" yet the plaintiff was not a party to the policy in question).

Local 20 easily satisfies the standard for Article III standing. The Umpire's decision resulted in Local 20 losing a work assignment to another union, unquestionably a sufficient injury in fact for standing purposes. The conduct of which Local 20 complains – the Umpire's alleged undisclosed bias – plausibly bears a causal connection to the injury, as a close relationship with Local 395 may well have influenced the Umpire's decision. Finally, a favorable decision in this suit would redress the injury by vacating the Umpire's decision and giving Local 20 another shot to arbitrate before an unbiased Umpire. Local 395 doesn't

argue to the contrary; its arguments for dismissal don't address the elements of constitutional standing, but instead the principle of "prudential" standing doctrine that requires a plaintiff be the real party in interest (rather than attempting to litigate the rights of third parties). Specifically, Local 395 argues that Local 20 doesn't have standing to bring this suit because Local 20 isn't a signatory to the NMA and so is not a party to the challenged arbitration; only Local 20's international union affiliate, International Sheet Metal, signed the collective bargaining agreement and was a party to the arbitration at issue. Accordingly, Local 395 argues that only the international union can sue regarding the conduct or outcome of the arbitration.

Local 395's ability to challenge the court's jurisdiction based solely on prudential standing is a little murky in light of relatively recent developments in the law. In <u>Lexmark Int'l, Inc. v. Static Control Components, Inc</u>., 134 S. Ct. 1377, 1386 (2014), the Supreme Court disapproved of the traditional prudential standing category on the grounds that the term "prudential" implies that a federal court can just choose not to decide a case – a proposition in tension with the principle that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." 134 S. Ct. at 1386 (internal quotation marks omitted). Use of the term "prudential standing" to describe limitations on a court's jurisdiction not rooted in Article III is now disfavored. *See* <u>United States v. Funds in the Amount of $239,400</u>, 795 F.3d 639, 645 (7th Cir. 2015)

(recognizing that Lexmark "cautioned that labels like 'prudential standing' and 'statutory standing' are misleading and should be avoided.").

So the word "prudential" is now taboo in standing jurisprudence. Lexmark's effect on the *substance* of the various requirements that make up what was previously called prudential standing is less clear. Some courts have expressed doubt as to whether prudential requirements such as the one relied on by Local 395 survive the Supreme Court's reasoning. *See* Freedom from Religion Found., Inc. v. Lew, 773 F.3d 815, 822 n.5 (7th Cir. 2014) ("The doctrine of prudential standing, we note, is somewhat unsettled after the Supreme Court's recent decision in Lexmark"); *see also* Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., 797 F.3d 1248, 1273 (11th Cir. 2015) ("The Supreme Court's recent decision in Lexmark … casts doubt on the future of prudential standing doctrines such as antitrust standing."); Kentucky v. U.S. ex rel. Hagel, 759 F.3d 588, 596 n.3 (6th Cir. 2014) (noting that "the Court has placed the continuing vitality of the prudential aspects of standing…in doubt.").

The Lexmark Court explicitly declined to address the prohibition on a plaintiff litigating the rights of third parties, since that branch of prudential standing doctrine wasn't before it. *See* Lexmark, 134 S. Ct. at 1394 n. 3 ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day."). For this reason, at least two circuit courts have explicitly dismissed Lexmark's broad criticism of prudential standing doctrine as dicta and continue to enforce

"the prudential requirement that a party must assert its own rights." Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc., 778 F.3d 502, 506 (5th Cir. 2015); *see also* Ray Charles Found. v. Robinson, 795 F.3d 1109, 1119 n.9 (9th Cir. 2015) (concluding that "the third-party-standing doctrine continues to remain in the realm of prudential standing" after Lexmark).

But dismissing a case on the grounds that the plaintiff isn't the proper party in interest – even though the injury and causation requirements of Article III standing are satisfied – implicates the same concerns expressed in Lexmark about federal courts derogating their duty to decide cases properly within their jurisdiction. If it is improper for a federal court to refuse to hear a case over which it has Article III jurisdiction simply for "prudential" judge-made reasons, the requirement that a party assert only its own rights would seem no less improper than any of the other prudential limitations courts have recognized. *See Standing-Civil Procedure-Lexmark International, Inc. v. Static Control Components, Inc.*, 128 HARV. L. REV. 321, 330 (2014) ("While the Court's opinion [in Lexmark] left third-party standing – and, presumably, prudential standing's 'not exhaustively defined' other pieces – for 'another day,' its philosophical underpinnings are incompatible with prudential standing as a whole.").

In light of this uncertainty, the court errs on the side of caution and declines to dismiss this case due to prudential standing concerns. There is no meaningful dispute that Local 20 has standing in the constitutional sense, so dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is

inappropriate; unlike Article III standing, prudential doctrines such as the requirement at issue here don't implicate the court's jurisdiction. *See* Dunnet Bay Const. Co. v. Borggren, 799 F.3d 676, 689 (7th Cir. 2015) ("In contrast with constitutional limitations on standing, prudential limitations are not jurisdictional and may be disregarded in certain situations."); Anton Realty, LLC v. Guardian Brokers Ltd., Inc., No. 1:13-CV-01915-JMS, 2015 WL 4041517, at *7 (S.D. Ind. July 1, 2015) (noting that a court "may bypass any prudential standing concerns because prudential standing is not jurisdictional in the sense that Article III standing is, and thus need not be addressed in every case.") (internal quotation marks omitted). Because Local 20 has clearly suffered an injury and that injury is causally tied to the conduct complained of, this isn't a case where prudential concerns mandate dismissal of the suit entirely.

Accordingly, the court DENIES Local 395's motion to dismiss for lack of standing (Doc. No. 24).

SO ORDERED.

ENTERED:  December 7, 2015

/s/ Robert L. Miller, Jr.
Judge
United States District Court